PRUDENCE REALIZATION CORPORATION, Plaintiff, v. GEORGE J. ATWELL, FRANK FOX, HARRY M. LEWIS, H. J. MAHNKEN, JEROME THRALLS, JOHN VANNECK, ARTHUR H. WATERMAN and PRUDENCE SECURITIES CORPORATION, Defendants.

First Department, July 3, 1942.

*Irving L. Schanzer*, for the plaintiff.

*Mark F. Hughes* of counsel [*Alfred J. Callahan* with him on the brief; *Willkie, Owen, Otis, Farr & Gallagher*, attorneys] for the defendants.

GLENNON, J. This is a submission of a controversy. The plaintiff is the successor of the trustees of Prudence Company, Inc., while the individual defendants are the voting trustees of the corporate defendant Prudence Securities Corporation. It is agreed between the parties that the main question involved is whether the voting trust agreement executed by the defendants or their predecessors is subject to the provisions of article 4-A of the Real Property Law, commonly called the Streit Act. If the answer is in the affirmative, the voting trust agreement expired on April 1, 1942; if in the negative, the voting trust agreement will continue until April 1, 1947, unless the collateral trust cumulative income bonds, series A, of the corporation are previously retired.

I am of the opinion that the voting trust agreement does not come within the provisions of article 4-A of the Real Property Law. Therefore, the question, in my view, should be answered in the negative.

It will be necessary to set forth, in substance, certain of the stipulated facts in order to indicate why I have reached this conclusion. Prudence Company, Inc., was organized in 1919 pursuant to the provisions of article VII of the Banking Law of the State of New York as then in force. It executed and delivered to the Central Union Trust Company of New York, as trustee, a trust

indenture dated May 1, 1926. It issued $15,000,000 of its guaranteed collateral trust five and one-half per cent gold bonds due May 1, 1961, on May 1, 1926. Incidentally, it might be noted that this indenture is referred to as the " old indenture " and the bonds issued at that time as the " old bonds." The collateral security consisted of various kinds of personal property, which may be classified as follows:

(1) Single bonds each secured by a mortgage on real estate;

(2) Cash;

(3) United States government obligations and other obligations of States and municipalities of the United States;

(4) Bonds issued by Prudence Bonds Corporation and mortgage participating certificates; and

(5) Securities constituting legal investments for savings banks and trustees.

Prudence Company, Inc., had a right to withdraw the collateral originally placed with the trustee, provided, of course, it was not in default, by substituting therefor " bonds, mortgages, cash and /or securities * * * of sufficient amount or value so that the value of the pledged property shall not be less than the face amount of the bonds then issued and outstanding hereunder * * *."

It cannot be disputed that the old indenture was not a mortgage. The collateral was described as " the pledged property."

Prudence Company, Inc., on May 1, 1933, defaulted in the payment of the installment of interest on the old bonds which became due on that date. The trustee, after the default, took over the control and management of all the collateral including the mortgages which secured the bonds. At that time it recorded certain assignments of the mortgages which it had in the pledged property. However, it never became the owner of the mortgages which were part of the collateral any more than it did of the cash or the governmental or municipal securities which it held. It might be well to point out that the old bonds were guaranteed by New York Investors, Inc., which was an investment company. The guaranty was on each of the bonds which was purchased by the public and passed upon a resale to each successor bondholder.

In 1935 a petition was filed in the United States District Court for the Eastern District of New York for the reorganization of Prudence Company, Inc., under section 77B of the National Bankruptcy Act. An order was entered on May 1, 1935, approving the petition. Trustees were appointed. On February 6, 1936, Prudence Company, Inc., proposed a separate plan of reorganization for the old bonds in the reorganization proceedings in the United States District Court. This plan of reorganization, as

amended, was approved on December 16, 1936, and was accepted by ninety-two per centum of the bondholders and by the trustees of Prudence Company, Inc.

It is unnecessary to set forth at length the details of the plan of reorganization as confirmed by the United States District Court. The corporate defendant was organized pursuant to the provisions of the plan. Ownership of all the collateral securities pledged with the trustee under the old indenture was vested in the corporate defendant except title to the real estate acquired upon the foreclosure of some of the mortgages securing the bonds which were part of the collateral pledged with the original trustee. Title to the said real estate was vested in two subsidiary corporations of the corporate defendant.

Pursuant to the plan of reorganization, the corporate defendant executed and delivered to Empire Trust Company, as the new trustee, a trust indenture dated April 1, 1937. Under it the corporate defendant pledged with the new trustee all the following property: " (a) 107 bonds secured by first mortgages as aforesaid in the aggregate principal amount of $6,377,539.50; (b) cash to the amount of $956,287; (c) Mortgage Participation certificates in mortgages secured by real estate in the amount of $699,450; (d) bonds of Prudence-Bonds Corporation secured by bonds secured by first mortgages upon real property in the face amount of $1,159,800; (e) Home Owners Loan Corporation bonds in the principal amount of $48,125." In addition all the capital stock and debenture bonds of the two wholly-owned subsidiary corporations, to which reference has been made already, were turned over to the new trustee.

Empire Trust Company, as trustee, under the new indenture was not in any sense a mortgagee but rather a pledgee of the collateral which had been given as security for the new bonds.

When the plan of reorganization was confirmed by the court, the value of the collateral exceeded the amount of the old bonds outstanding, so that an equity existed in favor of the trustees of Prudence Company, Inc. According to the agreed statement of facts, the entire capital stock of the corporate defendant, pursuant to said plan, was issued and delivered to the trustees of Prudence Company, Inc. Thereupon, the trustees of the latter executed a voting trust agreement dated April 1, 1937, and deposited the capital stock of the corporate defendant " under said Voting Trust Agreement, as provided by the provisions of said Plan of Reorganization." It is stipulated that " It was the intention of the interested parties that the term of the Voting Trust Agreement should be ten years unless a shorter period was prescribed by then existing applicable law."

It is contended by the plaintiff that the voting trust agreement expired on April 1, 1942, by virtue of the provisions of section 130-c of article 4-A of the Real Property Law. I do not believe that the section cited has any application to the question involved herein. It applies only to reorganizations dealing directly with real estate. It does not apply to collateral trusts such as we have here under consideration. While section 124 of the same article, which is entitled, " Purpose and application of article," might lead one to the view that the Streit Act, so-called, would apply, still a reading of the definitions of section 125 conclusively indicates that the act was designed to apply only to reorganizations of real property itself.

Surely the property which was pledged here cannot come within the purview of mortgage investment as defined in subdivision 1 of section 125 of the act; nor within the definition of property as found in subdivision 7. In addition when one reads what a trust indenture shall contain under section 126, it is quite clear that what the framers of the act had in mind was the reorganization of real property itself rather than collateral trusts.

I have pointed out already that the old bonds were guaranteed by New York Investors, Inc. While article 4-A does not contain a definition of the term investment company, still the facts as stipulated by the parties to this controversy indicate quite clearly that New York Investors, Inc., was an investment company within the meaning of section 125 of the act. Under its certificate of incorporation, it had the right to guarantee payment of the principal of and interest upon bonds and mortgages, so that even if the bonds here involved are to be considered mortgage investments, and since they were guaranteed by New York Investors, Inc., the definition of mortgage investments as contained in subdivision 1 of section 125 of the act, makes it apparent that those bonds referred to in the stipulation are exempt from the provisions of article 4-A. However, I do not believe that the bonds are mortgage investments.

It is urged by the defendants, and properly so, that the corporate defendant is not a corporation formed or used under a plan of reorganization of property as defined in article 4-A and, therefore, the provisions of subdivision 2 of section 130-c do not apply to the voting trust agreement so as to limit the terms of that agreement to five years. The only thing which was reorganized under the plan was the old bonds. Neither the collateral securing the bonds nor the real properties underlying the mortgages constituting part of that collateral were reorganized at all. As we have seen, the collateral was taken over by the corporate defendant and pledged

under a new indenture, similar to the old indenture, as security for the new bonds which were exchanged for the old.

I have reached the conclusion, therefore, that the voting trust agreement did not expire on April 1, 1942, but will continue in full force and effect until April 1, 1947, unless the collateral trust cumulative income bonds, series A, are previously retired.

Judgment should be rendered for defendants, without costs.

UNTERMYER and DORE, JJ., concur; MARTIN, P. J., and TOWNLEY, J., dissent.

MARTIN, P. J. (dissenting). The parties have submitted this controversy for the purpose of having determined whether provisions of article 4-A of the Real Property Law are applicable to the voting trust agreement described in the agreed statement of facts. The stipulated facts, in so far as they are essential, are set forth in the accompanying opinion of Mr. Justice GLENNON and will not be repeated here.

The positions of the parties are set forth in the agreed statement of facts as follows:

" 31. The plaintiff claims that said Voting Trust Agreement will expire on April 1, 1942, by reason of the provisions of Article 4-A of the Real Property Law and has notified the defendants that it will not consent to the continuation of said Voting Trust Agreement beyond April 1, 1942, and has demanded the delivery to it on that date of the capital stock of the corporate defendant.

" 32. The defendants claim that the provisions of Article 4-A of the Real Property Law do not apply to said Voting Trust Agreement and that said Voting Trust Agreement does not terminate until April 1, 1947, and further claim that, if said provisions of Article 4-A are applicable to said Voting Trust Agreement, they are, as so applied, invalid and void and unconstitutional under the provisions of Article I, Section 8, Clause 4, of the Federal Constitution in that they constitute improper infringement upon and limitation of the jurisdiction and power of the Federal bankruptcy court. The defendants have advised the plaintiff that the individual defendants will continue to perform their duties as Trustees after April 1, 1942 and that they will not recognize nor comply with the demand of the plaintiff that the Voting Trust Agreement shall terminate on said date and that the capital stock of the corporate defendant be delivered to the plaintiff."

Article 4-A of the Real Property Law consists of sections 124 to 130-k of the Real Property Law, inclusive. Section 124 reads in part as follows: " This article, except as otherwise expressly provided, shall apply, to the extent that the State has power to provide

therefor, to all mortgage investments, as hereinafter defined, where the property constituting the underlying security therefor, or any part thereof, is located within the State or where the trustee, committee, depositary, management company, voting trustee or other person administering, holding in custody, or otherwise concerned with such investments has an office for the transaction of business with respect thereto within the State or has obtained authority to do business in this State."

Subdivision 1 of section 125 defined " mortgage investments " and reads in part as follows: " 1. ' Mortgage investments ' shall mean and include any and all shares and interests, heretofore or hereafter acquired, in an issue of bonds, notes or other evidence of indebtedness of individuals, partnerships, associations or corporations, held by more than one person and secured by a mortgage or mortgages upon real property, or by a deed or deeds of trust, trust indenture or indentures or other evidence of interest in real property, the payment of which is not guaranteed by any title and mortgage guaranty corporation or investment company * * *."

It is clear from the agreed statement of facts that what we are concerned with is an " issue of bonds " held by " more than one person," which bonds are secured by " mortgages upon real property." These characteristics bring the securities within the provisions of subdivision 1 of section 125 if they are not guaranteed by a " title and mortgage guaranty corporation or investment company." The bonds are guaranteed by New York Investors, Inc. This is not a title and mortgage guaranty corporation. " Investment company " is defined in the Banking Law. There is no other statutory definition. New York Investors, Inc., was organized under the provisions of the Business Corporations Law, now incorporated in the Stock Corporation Law. We interpret the statute as being limited to an exclusion of mortgage investments guaranteed by an investment company organized under the provisions of the Banking Law solely.

We conclude that article 4-A of the Real Property Law is applicable to the trust agreement described in the agreed statement of facts, as there are involved " mortgage investments " as defined in the article. The property constituting the underlying security for the mortgage investments is located within the State of New York and the voting trustees meet the jurisdictional requirement.

It is urged that the statute applies only where there is a reorganization of an interest in real estate such as a mortgage or a fee ownership. Defendants say: " The concept of reorganizing real property itself is hard to grasp; but it is obvious that what the

Legislature meant was either the reorganization of ownership of, or a lien interest in, real property. In this case, neither the ownership of, nor a lien interest in, real property was reorganized in any respect." We cannot subscribe to any such narrow interpretation. Section 124 states: " It is the purpose of the Legislature, in enacting this article, to provide for the regulation and supervision of the appointment, creation, agreements, acts, conduct, practices and proceedings of trustees, bondholders' protective committees, depositaries, management companies, voting trustees and other persons administering, holding in custody or otherwise concerned with real estate mortgages and interests therein to the end that such interests will be properly conserved, administered and ultimately liquidated in the public interest. *  *  * "

Section 130-h provides: " This article shall be construed liberally to effectuate its purpose. *  *  * "

It may be convenient for the defendants to describe the reorganization as the reorganization of a bond issue. It was not as simple as it sounds. Actually, the reorganization here required the transfer of all pledged property, including twenty-four parcels of real property which had been acquired through foreclosure and which was part of the collateral for the outstanding bonds, the execution of a new indenture and the issuance of new bonds. As we view it, this was a reorganization of property within the intention of the statute.

To avoid the definition of mortgage investments as set forth in subdivision 1 of section 125 of the Real Property Law, the defendants urge that neither the old bonds nor the new bonds were secured by mortgage or mortgages upon real property or by deed or deeds of trust, trust indenture or indentures or other evidence of interest in real property. This ignores the provisions of the old indenture which transferred to the trustee mortgages and other items of collateral " in trust, nevertheless, for the common and equal use, benefit and security of all and singular the person or persons, firm or firms, body or bodies politic or corporate, who shall from time to time be holders or registered owners of any of the bonds. *  *  * "

Defendants argue that this is a collateral trust which was not intended to be subject to article 4-A and they point to the definitions of mortgage investments as set forth in the so-called Schackno and Mortgage Commission Acts which specifically include collateral trust issues. Defendants say that article 4-A omits any reference to collateral trusts and they, therefore, urge that thereby the Legislature evidenced an intention to exclude collateral trust issues

from the operation of the statute. The phraseology of article 4-a differs from that of the Schackno and Mortgage Commission Acts. In article 4-A the Legislature specifically provided that "mortgage investments" include shares and interests in an issue of bonds secured by a "trust indenture or indentures." The expression "trust indenture or indentures" is not limited or qualified and necessarily includes collateral trust obligations. The express purpose and object of article 4-A make it clear that it was intended to be broader than the prior statutes.

It may be of interest to note that with the exception of the cash item, all of the collateral presently held by the trustee consists of real estate or interests in real estate, and the cash fund is maintained for use in the protection of the items of real estate and mortgages held as part of the trust fund. There is nothing in the statute to indicate that the Legislature did not intend to have the provisions of article 4-A apply where real estate, bonds secured by mortgages on real estate and cash constitute the security for outstanding bonds.

The plan of reorganization pursuant to which the voting trust agreement was executed provides that the duration of the voting trust shall be for ten years or such shorter period as may be prescribed by law, or in the event that any new bonds, series A, are outstanding at the end of such period, for a further period " determined to be in conformity with the laws of the State of incorporation of the new company."

Apart from any estoppel which may have been created by this specific agreement that the law of the State of New York is determinative of the duration of the voting trust agreement, the constitutionality of the New York statute, in so far as it impinges on the power of the Federal bankruptcy court, was considered by the Circuit Court of Appeals for the Second Circuit in *Matter of Ambassador Hotel Corporation* (124 F. [2d] 435). It was held that article 4-A was applicable to a voting trust agreement created pursuant to a plan of reorganization under section 77B of the Bankruptcy Act, the court saying in part: " When the court confirmed a plan of reorganization which set up a New York corporation with stock issued to voting trustees, it used a tool created under and subject to State laws. The future fate of the corporation was not within the control of the bankruptcy court, nor could that court reserve power to adjudicate controversies in which it might become involved. * * * In selecting such a corporation as an instrumentality of reorganization, the bankruptcy court sent it out into the State as fully subject to State law as though the court had had nothing to do with its creation."

It is clear that article 4-A in no way limits or restricts the power of the Federal bankruptcy court.

We are of the opinion, therefore, that article 4-A applies to the voting trust agreement here involved and that plaintiff is entitled to judgment restraining the defendants from acting as voting trustees of the capital stock of the corporate defendant from and after April 1, 1942, and directing said individual trustees to deliver to plaintiff the certificate or certificates for all of the capital stock of the corporate defendant.

TOWNLEY, J., concurs.

Judgment directed for the defendants, without costs. Settle order on notice.